# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| FEDERAL INSURANCE COMPANY, ) ) Plaintiff, ) ) v. ) ) INDECK POWER EQUIPMENT ) COMPANY, ) ) Defendant. ) | Case No. CIV-15-491-D |

## ORDER

Before the Court is Plaintiff Federal Insurance Company's ("Federal") Amended Motion for Summary Judgment [Doc. No. 165]. Defendant Indeck Power Equipment Company ("Indeck") has filed its response in opposition [Doc. No. 172] and Federal has replied [Doc. No. 179]. The matter is fully briefed and at issue.

## STATEMENT OF UNDISPUTED FACTS

This action arises out of insurance coverage disputes related to a water treatment plant and improvements thereto designed and constructed for the City of Altus, Oklahoma and the Altus Municipal Authority (collectively "the Altus Plaintiffs"). Federal contends it has no duty to defend or indemnify Indeck for a lawsuit brought by the Altus Plaintiffs against Indeck concerning

construction regarding the plant ("the Altus Litigation").[1] At the onset of this litigation, the parties agreed to a bifurcated schedule in which they would first litigate the issue of whether Federal owed a duty to defend Indeck before conducting any discovery on the issue of whether Federal engaged in bad faith in denying coverage [Doc. Nos. 53, 64]. Accordingly, the parties submitted a Joint Stipulation of Undisputed Facts [Doc. No. 75] regarding the duty to defend issue. The following statement of facts is taken from that stipulation and other evidence in the record.

## I. THE INSURANCE POLICIES AT ISSUE

From December 2002 to December 2015, Federal issued commercial general liability (CGL) insurance policies to Indeck, which provided insurance coverage subject to the terms, conditions, exclusions, and limitations set forth therein. Each of the Federal Policies were subject to a $1,000,000 per occurrence limit and a $2,000,000 general aggregate limit. Subject to certain exclusions discussed herein, the policies consistently stated Federal would provide coverage for "property damage" caused by an "occurrence." Under the

---

[1] Since the inception of this lawsuit, the Altus Litigation has settled and Federal has settled all claims against co-defendant, Glenn Briggs & Associates, Inc. [Doc. Nos. 160, 174, 182]. Only claims involving Federal and Indeck remain.

policy, "property damage" was defined as (1) physical injury to tangible property, including resulting loss of use of that property or (2) loss of use of tangible property that is not physically injured. An "occurrence" was defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

The 2002-2003 Federal Policy included the following exclusions:

*Exclusions*

This insurance does not apply to:

\* \* \*

11. **Property damage** to **your product** arising out of it or any part of it.
12. **Property damage** to **your work** arising out of it or any part of it and included in the **products-completed operations hazard**.

    This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

13. Property damage to **impaired property** or property that has not been physically injured arising out of:
    a. A defect, deficiency, inadequacy or dangerous condition in **your product** or **your work**; or
    b. A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

    This exclusion does not apply to the loss of use of other property arising out of a sudden or accidental physical injury

3

    to **your product** or **your work** after it has been put to its intended use.
14. Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:
 a. **Your product**;
 b. **Your work**; or
 c. **Impaired property**;

(Emphasis in original).

In the policy, "your work" was defined as (1) work or operations performed by Indeck or on its behalf; and (2) materials, parts or equipment furnished in connection with such work or operations, including any warranties or representations made at any time with respect to the fitness, quality, durability, performance, or use of its work and the providing of or failure to provide instructions or warnings. "Your property" was defined as "[a]ny goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by … [Indeck] … others trading under [Indeck's] name; or [a] person or organization whose assets or business [Indeck] acquired." The term also included such items as "[c]ontainers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products."

"Impaired property" was defined as tangible property, other than Indeck's product or work, that could not be used or was less useful because (1)

it incorporated Indeck's product or work that is known or thought to be defective, deficient, inadequate or dangerous or (2) Indeck failed to fulfill the terms and conditions of a contract or agreement, if such property can be restored to use by either the repair, replacement, adjustment or removal of Indeck's product or work or by it fulfilling the terms and conditions of the contract.

## II. THE WATER TREATMENT SYSTEM AND THE ALTUS LITIGATION

On January 19, 1999, the Altus Plaintiffs entered into an "Agreement for Engineering Services" with Glen Briggs & Associates ("the Briggs Contract"). In 2003, Indeck agreed to construct the Water Treatment System for the Altus Plaintiffs. Altus, Indeck, and Briggs agreed to a "Date of Substantial Completion" of January 10, 2006, for Indeck's construction of the Water Treatment System.[2]

---

[2] The exact scope and nature of work Indeck and Briggs were to perform is unclear from the parties' submissions. For example, Briggs' contract states it was to provide professional engineering services for the construction of a "water treatment plant." [Doc. No. 75-1]. Indeck's contract says it was to commence and complete the construction of a "Reverse Osmosis Water Treatment Plant … RO/UF Process Equipment (Including Alternate Bid Full Membrane Replacement.")." [Doc. No. 75-2].

On November 5, 2013, the Altus Plaintiffs filed a lawsuit against Briggs arising out of the Water Treatment System styled *City of Altus, et al. v. Glenn Briggs & Associates, Inc., et al.*, Case No. CJ-2013-144, Jackson County District Court, State of Oklahoma ("the Altus action"). On January 6, 2014, the Altus Plaintiffs filed an Amended Petition that added Indeck as a defendant. Federal agreed to defend Indeck, through independent counsel of Indeck's choosing, subject to a reservation of rights set forth in correspondence dated April 2, 2014.

On February 11, 2016, Altus filed a Third Amended Complaint in the Altus action, alleging, *inter alia*, as follows:

1) Indeck entered into a contract with the Altus Plaintiffs for the construction of the Water Treatment Plant and improvements thereto, and breached the contract by failing to fulfill its obligations under the contract;

2) Indeck negligently designed, supervised, constructed, maintained, planned and/or evaluated the Water Treatment Plant and improvements thereto;

3) Indeck warranted, both expressly and impliedly, goods sold to the Altus Plaintiffs for use in the Altus Water Treatment Plant and breached said warranties;

4) Indeck made fraudulent assertions that its proposed repair of the the Altus Plaintiffs' membranes would result in a properly working OF and RO water treatment plant;

6

5) The Altus Plaintiffs were entitled to punitive damages for the fraudulent assertions by Indeck with regards to the proposed repair of the plaintiffs' membranes in an amount in excess of $75,000, as Indeck's fraudulent assertions were intentional and with malice;

6) Indeck and another company, Hydranautics, conspired to withhold information and test results from the Altus Plaintiffs which would have notified them of mistakes and damages to the plant caused by the acts and/or omissions of Indeck and/or Hydranautics during the initial operations;

7) Had the Altus Plaintiffs been given this information and the test results, Indeck and/or Hydranautics would have been required to fulfill their warranty requirements and may have voided the contract, but the information was intentionally hidden from the plaintiffs to their detriment by Indeck and Hydranautics;

8) The Altus Plaintiffs were entitled to punitive damages for the fraudulent acts and omissions of Indeck and Hydranautics with regards to their hiding and withholding information concerning damages to the plant as their fraudulent acts and omissions were intentional and with malice;

9) As a result of the actions of Indeck and others, the Altus Plaintiffs incurred damages in excess of $75,000; and

10) Indeck's actions constituted a reckless, willful and wanton disregard for the rights of the Altus Plaintiffs, as well as gross negligence, which entitled them to punitive damages in addition to any actual damages awarded.

*See* Third Amended Petition [Doc. No. 75-7].

During the course of discovery, the Altus Plaintiffs stated that due to the interconnected nature of the plant, failure of one area led to damage throughout the entire system; therefore, the plant had yet to achieve the full extent of its contracted use and levels. The plaintiffs further stated that the plant and wastewater system did not work as required under the parties' contract, and the membrane facility did not function correctly. *See* Pls. Responses to Def. Indeck Power Equip. Co.'s Interrogatories and Requests for Production [Doc. No. 75-3].

## STANDARD OF DECISION

"Summary judgment is proper if, viewing the evidence in the light most favorable to the non-moving party, there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Bonidy v. U.S. Postal Service*, 790 F.3d 1121, 1124 (10th Cir. 2015) (citing *Peterson v. Martinez*, 707 F.3d 1197, 1207 (10th Cir. 2013)). An issue is "genuine" if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). An issue of fact is "material" if under the substantive law it is essential to the proper disposition of the claim. *Id*. Unsupported conclusory allegations do not create an issue of fact. *Finstuen v. Crutcher*, 496 F.3d 1139,

1144 (10th Cir. 2007). "If a party that would bear the burden of persuasion at trial does not come forward with sufficient evidence on an essential element of its prima facie case, all issues concerning all other elements of the claim and any defenses become immaterial." *Adler*, 144 F.3d at 670 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

Once the moving party has met its burden, the burden shifts to the nonmoving party to present sufficient evidence in specific, factual form to establish a genuine factual dispute. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). The nonmoving party may not rest upon the mere allegations or denials of its pleadings. Rather, it must go beyond the pleadings and establish, through admissible evidence, that there is a genuine issue of material fact that must be resolved by the trier of fact. *Salehpoor v. Shahinpoor*, 358 F.3d 782, 786 (10th Cir. 2004).

## DISCUSSION

The parties agree that Illinois law governs the present dispute. Under Illinois law:

> [A]n insurance policy is a contract, and the same rules of construction that apply to other types of contracts apply to insurance policies. Thus, a court must construe the policy as a whole, taking into account the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract.

9

> The primary objective is to ascertain and give effect to the intention of the parties as expressed in the agreement. A court must accord the insurance policy's terms their plain and ordinary meaning.

*Archer Daniels Midland Co. v. Burlington Ins. Co. Group, Inc.*, 785 F. Supp. 2d 722, 727 (N.D. Ill. 2011) (internal citations and quotations omitted).

The insurer's duty to defend its insured is broader than the duty to indemnify because it arises in cases of arguable or potential coverage. *Lockwood Int'l, B.V. v. Volm Bag Co., Inc.*, 273 F.3d 741, 746 (7th Cir. 2001); *Cincinnati Ins. Co. v. Taylor-Morley, Inc.*, 556 F. Supp. 2d 908, 913 (S.D. Ill. 2008). An insurer's duty to defend arises when the allegations of the underlying complaint potentially come within the coverage of the policy. *Title Industry Assur. Co., R.R.G. v. First Am. Title Ins. Co.*, 853 F.3d 876, 883 (7th Cir. 2017); *Millers Mut. Ins. Ass'n of Ill. v. Ainsworth Seed Co., Inc.*, 552 N.E.2d 254, 256 (Ill. App. Ct. 1989) ("[T]he obligation of an insurer to defend an action brought against its insured must be decided by comparing the allegations of the complaint against the insured with the terms of the policy.") (citations omitted). This is commonly referred to as the "eight corners" rule. *Title Industry*, 853 F.3d at 883; *Pekin Ins. Co. v. Illinois Cement Co., LLC*, 51 N.E.3d 812, 820 (Ill. App. Ct. 2016). "The insurer may not simply refuse to

defend a suit against its insured unless it is clear from the underlying complaint 'that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage.'" *Title Industry*, 853 F.3d at 883 (citation omitted).

Therefore,

> [i]n conducting its review, the court liberally construes the underlying complaint and the insurance policy in the manner reasonably most favorable to the insured. The court gives little weight to the legal labels attached to the underlying allegations. Because the duty to defend usually depends on the contents of these written documents—the insurance policy and the complaints against the insured—the issue can often be decided on a motion for summary judgment. The rule of Illinois law most important here is that if the underlying complaint alleges several theories of recovery, the insurer's duty to defend arises even if only one such theory is within the potential coverage of the policy.

*Id*. (internal citations and quotations omitted).

When an insurer brings a timely declaratory judgment action, courts may look beyond the four corners of the underlying complaint and consider extrinsic evidence. *Title Industry*, 853 F.3d at 884 ("To require the trial court to look solely to the complaint in the underlying action to determine coverage would ... greatly diminish a declaratory action's purpose of settling and fixing the rights of the parties.").

11

Federal contends no duty to defend was triggered because (1) the Altus Plaintiffs' claims do not constitute "property damage" as that term is defined under the Federal Policies, (2) the Altus Plaintiffs' damages were not caused by an "occurrence" as that term is defined under the policies, and (3) certain exclusions in the policies bar coverage. Upon review, and being mindful of the standard that the duty to defend is triggered unless it is clear from the underlying complaint that the allegations fail to bring the case within or potentially within the policy's coverage, and that if even one theory of recovery is within the potential coverage of the policy there is a duty to defend, the Court finds that the underlying allegations against Indeck are sufficient to trigger Federal's duty to defend under the circumstances here.

In the Altus Litigation, the Third Amended Petition alleged that Indeck negligently designed, supervised, constructed, maintained, planned and/or evaluated the Water Treatment Plant *and improvements thereto*. *See* Third Amend. Pet. ¶ 6 (emphasis added) [Doc. No. 75-7]. As acknowledged by the Seventh Circuit, Illinois law recognizes that negligently performed work or defective work can give rise to an "occurrence" under a CGL policy, especially where, as in this case, the policy defines an "occurrence" as "continuous or repeated exposure to conditions." *See Westfield Ins. Co. v. Nat'l Decorating*

*Service, Inc.*, 863 F.3d 690, 697 (7th Cir. 2017) (citing *Lyerla v. AMCO Ins. Co.*, 536 F.3d 684, 690 (7th Cir. 2008)).

Moreover, it is true, as Federal contends, that the duty to defend is not triggered where the loss is alleged to have been sustained as a result of defects in, or damage to, the insured's *own* project. *See id.* However, damage to something *other* than the project itself does constitute an "occurrence." *See id.* (citing *Milwaukee Mut. Ins. Co. v. J.P. Larsen, Inc.*, 956 N.E.2d 524, 532 (Ill. App. Ct. 2011)). As noted above, the Court finds there is conflicting evidence, here regarding the exact scope of Indeck's work. It is unclear on the present summary judgment record whether Indeck's work extended to the entire plan and system, or whether certain aspects of the system were beyond the scope of Indeck's work. As noted above, viewing the record and evidence in the light most favorable to Indeck, as the Court must, the underlying petition and attendant discovery suggest the Altus Plaintiffs sought damages to parts of the water treatment system beyond those components Indeck was responsible to build or improve. Because there is persuasive evidence on both sides of the parties' dispute on this issue, summary judgment is not appropriate.

Regarding property damage, the record evidence supports the inference that the Altus Plaintiffs allege the existence of "property damage" as that term

13

was defined. As noted *supra*, "property damage" was consistently defined throughout the policies as (1) physical injury to tangible property, including resulting loss of use of that property or (2) loss of use of tangible property that is not physically injured. Here, the Altus Plaintiffs, in discovery, alleged damage throughout the system due at least in part to Indeck's acts and/or omissions.

Finally, Federal's contention that certain exclusions found within the policies bar coverage is rejected. Federal contends that several "business risk exclusions" exclude damage to Indeck's "product," its "work," and "impaired property."[3] Specifically, Federal contends that the "your product" and "impaired property" exclusions bar coverage because these proceedings involve damage to Indeck's "product," i.e., the goods and products that Indeck manufactured and handled, and "impaired property," i.e., the water treatment system that was allegedly made less useful because of a deficiency in Indeck's

---

[3] Business risk exclusions are standard in CGL policies. *Sokol and Co. v. Atlantic Mut. Ins. Co.*, 430 F.3d 417, 423 (7th Cir. 2005). "The purpose of business risk exclusions is to exclude coverage of risks that could be avoided by the insured company itself; that is, to effectuate the intent of the parties that the CGL coverage be for tort liability resulting from the product and/or work of the insured company, and not a warranty on the quality of the product or work itself." *American Ins. Co. v. Crown Packaging Intern.*, 813 F. Supp. 2d 1027, 1046 (N.D. Ind. 2011) (citation omitted).

products, its services, or because of Indeck's failure to fulfill the terms of the contract.

Under Illinois law, exclusions in a policy are construed liberally in favor of the insured and narrowly against the insurer. *West Side Salvage, Inc. v. RSUI Indemnity Co.*, 878 F.3d 219, 224 (7th Cir. 2017). Accordingly, it must be "clear and free from doubt" that an exclusion applies. *RSUI Indemnity Co. v. McDonough Dist. Hosp.*, No. 4:16-cv-4177, 2017 WL 4319117, at *4 (C.D. Ill. Sept. 28, 2017) (quoting *Atlantic Mut. Ins. Co. v. American Academy of Orthopaedic Surgeons*, 734 N.E.2d 50, 56 (Ill. App. Ct. 2000)). As indicated above, Federal's motion on this issue is denied, since it cannot be established from the record evidence that the only damage alleged in the underlying petition was due to Indeck's own work and to its own product. Nor does the Court find the "impaired property" exclusion applicable, since there is no evidence in the record that the subject property has been restored to use by either the repair, replacement, adjustment or removal of Indeck's product or work or by Indeck fulfilling the terms and conditions of the contract.

In sum, because there is conflicting evidence on the nature and scope of Indeck's work, and it cannot be said that at least one theory of recovery in the

Altus Litigation does not fall within the scope of the policy, Federal's Amended Motion for Summary Judgment is denied.

## CONCLUSION

Plaintiff Federal Insurance Company's Amended Motion for Summary Judgment [Doc. No. 165] is **DENIED** as set forth herein.

**IT IS SO ORDERED** this 11th day of September 2018.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE