# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| FEDERAL INSURANCE COMPANY, )<br>)<br>*Plaintiff/Counter-Defendant*, )<br>)<br>v. )<br>)<br>INDECK POWER EQUIPMENT )<br>COMPANY, et al., )<br>)<br>*Defendants/Counter-Plaintiffs*. ) | Case No. 5:15-cv-00491-D |

## ORDER

Counter-Defendant Federal Insurance Company ("Federal") has filed a Motion to Dismiss [Doc. No. 197] seeking the partial dismissal of Indeck Power Equipment Company's Second Amended Counterclaim [Doc No. 195]. Counter-Plaintiff Indeck Power Equipment Company ("Indeck") has filed a response in opposition [Doc. No. 207], to which Federal has replied [Doc. No. 216]. The matter has been fully briefed and is at issue.

## BACKGROUND

In October 2003, Indeck contracted with the City of Altus and the Altus Municipal Authority (collectively, "*Altus* Plaintiffs"). Under the terms of that agreement, Indeck was to install portions of a water treatment system. Federal's Original Complaint [Doc. No. 1] at 2–3, ¶ 11. Disputes arose, and, pursuant to that contract, *Altus* Plaintiffs filed a lawsuit ("*Altus*") against Indeck on November 5, 2013. By that time, Federal had issued thirteen insurance policies to Indeck, all effective continuously from December 1, 2002 to December 1, 2015 ("Federal Policies"). Indeck's Second Amended

1

Counterclaim at 3, ¶ 4. In the Federal Policies, Federal allegedly agreed to defend Indeck in *Altus*, subject to a reservation of rights, and agreed that Indeck could rely on independent counsel at Federal's expense. *Id.* at 4, ¶ 20.

Because of certain developments surrounding Indeck's use of independent counsel in *Altus*, Federal now brings the present action. Federal originally claimed to have no duty to defend or indemnify Indeck and sought to withdraw from Indeck's defense in *Altus*, claiming that *Altus* Plaintiffs do not seek any damages covered by the Federal Policies. *Id.* at 7, ¶¶ 34–36. Indeck has since filed and twice amended a counterclaim. Second Amended Counterclaim, Doc. No. 195.

At issue here are Counts I–VI of Indeck's Second Amended Counterclaim. Count I alleges a breach of contract. *Id.* at 25. Count II is a voluntary undertaking claim. *Id.* at 27. Count III alleges violations of § 155 of the Illinois Insurance Code. *Id.* at 29. Count IV alleges breach of the duty of good faith and fair dealing, under Oklahoma law. *Id.* at 33. Count V is a claim for violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("Consumer Fraud Act"). *Id.* at 34. Count VI is a claim for prejudgment interest. *Id.* at 39. Facts relevant to each count will be detailed in corresponding sections below.

## STANDARD OF DECISION

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The "plausibility standard" announced in *Twombly* and *Iqbal* is not a "heightened standard" of pleading, but rather a "refined standard." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (citing *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011)). Under the "refined standard," plausibility refers "to the scope of the allegations in the complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Khalik*, 671 F.3d at 1191; *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). Further, the Tenth Circuit has noted that "[t]he nature and specificity of the allegations required to state a plausible claim will vary based on context." *Khalik*, 671 F.3d at 1191.

## I. A ruling on choice-of-law issues at this stage of the litigation remains premature.

Federal is alleged to have tortiously breached the duty of good faith and fair dealing. Second Amended Counterclaim at 33. While Indeck brings these claims in Count IV under Oklahoma law, Federal maintains that Illinois law should govern any bad faith allegations. Motion at 4. Under Illinois law—Federal asserts—Indeck has failed to state a claim. *Id.* Federal once before made this argument to the Court in a motion to dismiss. *See* Federal's Motion to Dismiss Count III of Indeck's First Amended Counterclaim, Doc. No. 88. In denying Federal's earlier Motion, the Court concluded that "at this stage of litigation, it would be inappropriate to issue a ruling . . . because doing so would require what applicable

3

precedent prohibits, which is to weigh the choice-of-law evidence submitted by the parties." Order, Doc. No. 107. The Court explicitly stated that such a ruling would be "improper on a motion brought under Rule 12(b), and the issue would be better resolved through summary judgment." *Id.* at 3 (citing *Jones v. Lattimer*, 29 F. Supp. 3d 5, 10 n.3 (D.D.C. 2014)).

The Court adheres to its previous ruling. While certainly the litigation has progressed, discovery is still ongoing. *See* Scheduling Order, Doc. No. 222. And applicable precedent influencing the Court's logic in its previous Order holds true. Any choice-of-law issues will be better resolved at the summary judgment stage.

The Court declines to reconsider its previous Order and decide any choice-of-law issues prematurely. All parties agree Illinois substantive law controls the analysis of the remaining claims. Second Amended Counterclaim at 4.

## II. Indeck's voluntary undertaking claim is dismissed without prejudice, given that Federal had a duty to defend.

Federal moves the Court to dismiss Count II of Indeck's Second Amended Counterclaim, a voluntary undertaking claim. Indeck agrees dismissal of Count II is proper on different grounds. Indeck's Response, Doc. No. 207, at 28. Indeck pleaded the voluntary undertaking claim in the alternative, should the Court find Federal owed no duty to defend. *See* Indeck's Response, Doc. No. 207 at 28. The Court, in a previous Order—issued after Indeck filed its Second Amended Counterclaim—determined Federal's duty to defend was triggered. Order, Doc. No. 190, at 12.

Therefore, both parties submit that the voluntary undertaking claim should be dismissed. Federal's Reply at 3 n.3. The Court agrees and dismisses Count II, without prejudice.

## III. Count V brought under the Consumer Fraud Act is not preempted and is stated with sufficient specificity.

### a) Claims raised as Consumer Fraud Act violations are not preempted by §155 of the Illinois Insurance Code.

Federal asserts Count V[1] of Indeck's Second Amended Counterclaim should be dismissed. Motion at 12. Count V claims Federal's actions violated the Consumer Fraud Act. Doc. No. 195 at 35, ¶ 166–78. In support, Indeck contends that Federal secretly contacted Indeck's independent counsel to obtain a tactical advantage in litigation. *Id.* at 35, ¶ 170. Federal allegedly coerced Indeck's independent counsel by threatening to withhold $20 million in revenue. *Id.* Indeck claims that Federal also sought to improperly condition a mutually-beneficial waiver of rights, so that Federal could pursue bad faith claims against Indeck. *Id.* Federal is also alleged to have attempted to improperly bias expert witness testimony. *Id.* Federal moves to dismiss Count V claiming the Consumer Fraud Act is preempted by § 155 of the Illinois Insurance Code. Federal further claims Count V fails because Indeck does not allege actual damages with particularity. Motion at 12.

---

[1] In its Motion and Reply, Federal refers to Indeck's claim asserting a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act as Count VI. *See* Motion at 12; Federal's Reply at 9. But Indeck's Second Amended Counterclaim addresses this cause of action under Count V. *See* Second Amended Counterclaim at 34. Count VI is a claim for prejudgment interest. *Id.* at 39.

5

The Consumer Fraud Act creates a cause of action for a person who suffers damages resulting from its violation. 815 Ill. Comp. Stat. Ann. 505/10a. A defendant violates the Act when she uses or employs "any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact" with the intent that others rely on the fraud, though no actual reliance is necessary. § 2. "Merchandise" includes services, § 1(e), and "[t]he sale of insurance is clearly a service and insureds are thus consumers and within the protection of the Consumer Fraud Act." *Leona's Pizzeria, Inc. v. Nw. Nat. Cas. Co.*, 203 F. Supp. 2d 930, 933 (N.D. Ill. 2002) (quoting *Fox v. Indus. Cas. Ins. Co.*, 98 Ill.App.3d 543, 54 Ill.Dec. 89, 424 N.E.2d 839, 842 (1981)). To state a claim under the Act, a plaintiff must allege that the defendant engaged in (1) a deceptive act or practice (2) during the course of conduct involving commerce (2) with the intent that plaintiff rely on the deception. *See Burress-Taylor v. Am. Sec. Ins. Co.*, 980 N.E.2d 679, 688–89 (Ill. App. 2012).

Section 155 of the Illinois Insurance Code "provides an extracontractual remedy to policyholders whose insurer's refusal to recognize liability and pay a claim is vexatious and unreasonable." *Cramer v. Ins. Exch. Agency*, 174 Ill.2d 513, 221 Ill.Dec. 473, 675 N.E.2d 897, 900 (1996). Under Illinois law, a defendant's conduct can both breach a contract and simultaneously constitute a separate and independent tort. *Id*. at 917 (citing *Kelsay v. Motorola, Inc.,* 74 Ill.2d 172, 187, 23 Ill.Dec. 559, 384 N.E.2d 353 (1978)); *see also Leona's Pizzeria*, 203 F. Supp. 2d at 934 ("Nonetheless, § 155 leaves the door open for claims that truly sound in tort, particularly fraud."). "Mere allegations of bad faith or unreasonable and vexatious conduct, without more, however, do not constitute such a tort."

*Cramer*, 675 N.E.2d at 917. Courts must look past the legal theory asserted and examine the conduct forming the basis for the claim. *Id.* at 904. "[A]ny count alleging nothing more than the conduct proscribed by section 155 is preempted by the statute." *Mazur v. Hunt*, 227 Ill.App.3d 785, 169 Ill.Dec. 848, 592 N.E.2d 335, 340 (1992) (cited favorably in *Cramer,* 675 N.E.2d at 905).

Federal argues that Indeck has done nothing more than dress up a breach of contract claim in the language of fraud. And that, therefore, Indeck's claim under the Consumer Fraud Act is preempted by § 155 of the Illinois Insurance Code. *See* Motion at 12. In support of the Consumer Fraud Act claim Indeck relies on allegations that Federal improperly contacted and attempted to influence independent counsel, coerced independent counsel, improperly prolonged conflict, withheld payments, misrepresented policy limits, and attempted to improperly influence the testimony of experts. *Id.* at 36–37, ¶¶ 170. Indeck argues that Federal's conduct was so egregious that the Consumer Fraud Act claim should survive. Indeck's Response at 18–20.

The relevant inquiry here is whether the conduct giving rise to the fraud allegations is one and the same as the conduct giving rise to a breach of contract claim. *Cramer,* 675 N.E.2d at 905. Illinois courts have allowed fraud claims to proceed where the fraud claims were "separate and independent" of any asserted breach of contract claims. *See Burress-Taylor*, 980 N.E.2d at 679. In *Burress-Taylor v. American Security Insurance*, an Illinois court allowed a Consumer Fraud Act claim to proceed where a plaintiff incorporated by reference and realleged the factual basis underlying her breach of contract claim. *Id.* at 688–89. In addition to the overlapping facts, however, the plaintiff in *Burress-Taylor* also

7

accused the insurance company of "continuously refusing to honor Plaintiff's insurance claims," and of "consistently informing Plaintiff that the amounts were being disputed when in reality neither company was actively pursuing the issue." *Id.* at 689. This was sufficient to satisfy the first element of a consumer fraud claim. *Id.*

Like in *Buress-Taylor*, Indeck has realleged—in support of the Consumer Fraud Act claim—many of the facts supporting Indeck's breach of contract claim.[2] But Indeck has done more than merely allege that Federal "failed to pay the claim, made 'bad faith' demands for documents, conducted a burdensome investigation, [or] delayed in resolving the claim." *W. Howard Corp. v. Indian Harbor Ins. Co.*, 2011 WL 2582353, at *5 (N.D. Ill. June 29, 2011).[3] Rather, Indeck's allegations track more closely with those asserted in cases where Illinois courts have allowed Consumer Fraud Act claims to proceed. For example, in *General Insurance Company of America v. Clark Mali*, the court allowed a Consumer Fraud Act claim to proceed. There, the insured alleged that the insurer promised it would pay valid claims but then consistently delayed bringing the claim process to a resolution while demanding additional information and presenting a "façade of compliance." No. 08 C 2787, 2010 WL 1286076, at *4 (N.D. Ill. Mar. 30, 2010); *see also Buress-Taylor*, 980 N.E.2d at 689 (Consumer Fraud Act claim not preempted by § 155

---

[2] And as Federal diligently points out, there is a large amount of overlap between the two claims. Motion, Doc. No. 197, Ex.1. The instruction from Illinois courts, however, is to "look past the legal theory asserted and examine the conduct forming the basis for the claim." *Cramer*, 675 N.E.2d at 904.

[3] Such conduct has been found to amount to nothing more than "a denial of benefits and breach of contract, with an accompanying bad faith claim under § 155." *Id.; see also New Park Manor, Inc. v. N. Pointe Ins. Co.*, No. 13 C 4537, 2013 WL 5408856, at *4–7 (N.D. Ill. Sept. 26, 2013).

8

where allegations suggested an insurance company took "a series of dilatory, deceptive and punitive maneuvers to mask [its] non performance.").

In *Wheeler v. Assurant Specialty,* the plaintiff plausibly alleged that an insurer "pa[id] off a retained expert to render a contrary opinion so as to provide a basis for denying a valid claim" while "represent[ing] it was complying with its contractual obligations and working on settling the claim." 125 F. Supp. 3d 834 (N.D. Ill. 2015). The court in *Wheeler* found the conduct described rose "to the level of alleged fraud." *Id*. Like in *Wheeler* and *Clark Mali,* Indeck alleges Federal attempted to pay off experts, engaged in dilatory conduct to prolong conflict, and attempted to coerce independent counsel's cooperation. Second Amended Counterclaim at 36–37, ¶ 170. Indeck alleges Federal intended for others to rely upon its deceptive conduct. *Id.* at 36, ¶ 171.

The Court accepts all Indeck's allegations as true and draws all reasonable inferences in Indeck's favor. At this stage, Indeck's allegations are sufficient to plausibly state a claim of fraud.[4] *See Wheeler,* 125 F. Supp. 3d at 843. Although the validity of Indeck's allegations remains to be proven, the Court cannot say the conduct described is, as a matter of law, preempted by § 155 of the Illinois Insurance Code, or otherwise insufficient to state a claim.

---

[4] Allegations sounding in fraud are governed by a heightened pleading standard, set forth in Fed. R. Civ. P. 9(b). Illinois courts apply the 9(b) heightened pleading standard to deceptive practices claims brought under the Consumer Fraud Act. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014). The Court concludes Indeck has alleged sufficient facts to meet the standards of Fed. R. Civ. P. 9(b).

> *b) Indeck's Consumer Fraud Act claim has been alleged with sufficient specificity with respect to damages.*

Federal further claims that the Consumer Fraud Act must be dismissed because it fails to sufficiently allege damages resulting from the conduct at issue under the Consumer Fraud Act.

As part of a claim under the Consumer Fraud Act, a plaintiff must also allege actual damage which was proximately caused by the deception. *Jamison v. Summer Infant (USA), Inc.*, 778 F. Supp. 2d 900, 907 (N.D. Ill. 2011); *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill.2d 100, 296 Ill.Dec. 448, 835 N.E.2d 801, 856 (2005). To plead damages, a "plaintiff must allege that she has been harmed in a concrete, ascertainable way." *Frye v. L'Oreal USA, Inc.*, 583 F. Supp. 2d 954, 957 (N.D. Ill. 2008). "Theoretical harm is insufficient. Damages may not be predicated on mere speculation, hypothesis, conjecture or whim." *Jamison*, 778 F. Supp. 2d at 911. Illinois courts apply the 9(b) heightened pleading standard to deceptive practices claims brought under the Consumer Fraud Act. *Camasta*, 761 F.3d at 737. Notably, however, "the required allegation of proximate cause is minimal since that determination is best left to the trier of fact." *Terrazzino v. Wal-Mart Stores, Inc.*, 335 F. Supp. 3d 1074, 1085 (N.D. Ill. 2018) (quoting *Connick v. Suzuki Motor Co.,* 174 Ill.2d 482, 221 Ill.Dec. 389, 675 N.E.2d 584, 595 (1996)).

Federal claims Indeck has made no more than bare allegations of harm and "incurred costs, expenses, and attorney's fees." Motion at 15. Federal claims Indeck has not provided any facts from which injury or damages could be inferred. *Id.* Indeck responds that Federal's egregious and deceptive conduct caused Indeck to front large amounts of

money to defend itself against *Altus* Plaintiffs. Indeck's Response at 24. Indeck's Second Amended Counterclaim alleges that Federal "wrongfully attempted to coerce Indeck's independent defense counsel to betray Indeck by falsely advising Indeck that its coverage and bad faith arguments were weak, thus influencing [Indeck] to contribute its own funds to settlement." Doc. No. 195 at 36, ¶ 141. Further, Indeck's Second Amended Counterclaim asserts that Federal wrongfully represented policy limits and made efforts to interfere with *Altus*, which has forced Indeck to "devote substantial resources in the form of time expended by its officers and employees." *Id*. at 36, ¶ 142–43. Indeck estimates the amount spent at one time reached more than $1.2 million, part of which remains unpaid by Federal. *Id*. at 3, ¶ 11; Federal's Reply at 1 n.1. Accepted as true and drawing all inferences in favor of Indeck, there are sufficient facts alleging causation and damages for the Consumer Fraud Act to survive a motion to dismiss. *Cf. Connick*, 675 N.E.2d at 595 ("required allegation of proximate cause is minimal").

## IV. The breach of contract claim sufficiently alleges damages.

Federal also argues that Indeck failed to sufficiently plead damages with respect to Count I, a breach of contract claim. Federal seeks the dismissal of paragraphs 137 through 141 of Indeck's Second Amended Counterclaim because Indeck failed to support with detail its claim for consequential damages. Motion at 14 n.14.

To state a cause of action for breach of contract, a plaintiff must allege "(1) the existence of a valid contract; (2) plaintiff's performance of all required contractual conditions; (3) defendant's breach of the terms of the contract; and (4) damages resulting from the breach." *Lindy Lu, LLC v. Ill. Cent. R. Co.,* 2013 IL App (3d) 120337, ¶ 21, 984

11

N.E.2d 1171, 1175. "[F]ailure of proof of damages does not justify the dismissal of a claim for breach of contract, as it does most tort claims. The victim of a breach of contract is always entitled to nominal damages if he proves a breach but no damages." *Olympia Hotels Corp. v. Johnson Wax Dev. Corp.*, 908 F.2d 1363, 1372 (7th Cir. 1990).

Indeck has allegedly incurred substantial economic damages because of Federal's breach of contract. Second Amended Counterclaim at 25, ¶ 7; Indeck's Response at 21. To determine whether Indeck has stated a claim as to Count I, the Court considers the pleadings as a whole. *Cf. Heller Int'l Corp. v. Sharp*, 839 F. Supp. 1297, 1303 n.2 (N.D. Ill. 1993) ("Defendants continually refer to 'a claim for consequential damages' as if it has an independent existence separate and apart from [plaintiff's] breach of contract action when in reality it is but a part of the breach of contract action."). Dismissal of any part of Count I—a breach of contract claim—solely based on a failure to sufficiently allege damages would be improper. *See, e.g., Zenith Elecs. Corp. v. WH-TV Broad. Corp.*, No. 01 C 4366, 2003 WL 22284326, at *4 (N.D. Ill. Oct. 2, 2003), *aff'd*, 395 F.3d 416 (7th Cir. 2005) (Without the ability to prove damages, "[plaintiff] may proceed to trial on its breach of contract claim . . . although its damages are limited to nominal damages."). Federal's Motion to Dismiss paragraphs 137 through 141 of Indeck's Second Amended Counterclaim is denied.

V. **Count III brought under § 155 of the Illinois Insurance Code sufficiently alleges vexatious and unreasonable conduct.**

Next, Federal asks that the Court dismiss paragraph 152 of Count III of Indeck's Second Amended Counterclaim. Motion at 21–22. Federal alleges that paragraph 152

does nothing more than introduce formulaic recitations of the Illinois Administrative Code and the Illinois Insurance Code. *Id.* at 20. As with Count I, analyzed *supra*, the Court declines Federal's invitation to analyze a single paragraph of the claim in isolation.[5] Instead, the Court turns to whether Count III as a whole sufficiently alleges vexatious and unreasonable conduct.

Where an insurer's actions are "vexatious and unreasonable," Section 155 of the Illinois Insurance Code allows an insured to recover attorney's fees and extracontractual damages. *Cramer*, 675 N.E.2d at 902. Determining whether conduct is vexatious or unreasonable is a question of fact resolved by looking to the totality of the circumstances. *See Med. Protective Co. v. Kim*, 507 F.3d 1076, 1086 (7th Cir.2007). But "[s]imply pleading that [the insurer] knowingly and intentionally refused to provide insurance coverage and that [the insurer's] refusal 'was and continues to be vexatious and unreasonable,' without some modicum of factual support, is insufficient to plausibly suggest that [the insured] is entitled to relief under the statute." *Scottsdale Ins. Co. v. City of Waukegan*, No. 07 C 64, 2007 WL 2740521, at *2 (N.D. Ill. Sept. 10, 2007).

Here, Indeck has alleged Federal attempted to coerce independent defense counsel to act against Indeck, refused to waive a conflict of interest to leverage bad faith claims,

---

[5] Federal cites to *Johnson v. Independent School District No. 89 of Oklahoma City*, presumably as support that it would be proper for the Court to analyze paragraph 152 in isolation. No. CIV-15-680-D, 2016 WL 1270266, at *5 (W.D. Okla. Mar. 31, 2016) (DeGuisti, J.). In *Johnson*, this Court granted a motion to dismiss on part of a count asserting a due process violation. *Id*. In that case, the opposition presented facts that when judicially noticed by the Court suggested a conclusion opposite to what the plaintiff was asserting. *Id*.

and improperly and belatedly asserted false policy limits for purposes of coercing a settlement. Second Amended Counterclaim at 32.[6] These allegations will suffice. *See W. Wind Express v. Occidental Fire & Cas. Co. of N.C.*, No. 10–CV–6263, 2013 WL 2285799, at *4 (N.D. Ill. May 23, 2013) ("[B]ecause [determining if an insurer's conduct was vexatious or unreasonable] presents a factual question, the Court may not decide the issue on the pleadings alone, although the issue may be susceptible to disposition at summary judgment if the facts developed fail to show a genuine issue of disputed material fact."); *Markel Am. Ins. Co. v. Dolan*, 787 F.Supp.2d 776, 779 (N.D. Ill.2011) (allegations that insurer misrepresented facts and conducted inadequate investigation sufficient to survive motion to dismiss).

## VI. Allegations are sufficient to allow prejudgment interest claims to proceed.

Finally, Federal contends Count VI of Indeck's Second Amended Counterclaim should be dismissed because "damages are not really ascertainable." Motion at 22.

Section 2 of the Illinois Interest Act provides, in relevant part, that "[c]reditors shall be allowed to receive [interest] at the rate of five (5) per centum per annum for all moneys after they become due on any . . . instrument of writing." 815 ILCS 205/2 (West 2004). "An insurance policy qualifies as an instrument of writing within the statute." *Lyon Metal*

---

[6] Whether or not these actions constitute a violation of the Illinois Unfair Claims Practice Act is not at issue, as the Act itself provides no private right of action. *Zagorski v. Allstate Ins. Co.*, 2016 IL App (5th) 140056, ¶ 26, 54 N.E.3d 296, 304; *Area Erectors, Inc. v. Travelers Prop. Cas. Co. of Am.*, 2012 IL App (1st) 111764, ¶ 30, 981 N.E.2d 1120, 1127. Rather this is merely illustrative of the kind of vexatious and unreasonable conduct for which a private right of action is provided under § 155 of the Illinois Insurance Code. *Id.*

14

*Prods., LLC v. Prot. Mut. Ins. Co.,* 321 Ill.App.3d 330, 254 Ill.Dec. 455, 747 N.E.2d 495, 510 (2001). To recover prejudgment interest, "the sum due must be liquidated or subject to an easy determination by calculation or computation." *Id.* Interest may be recovered from the time money becomes due under the policy. *Cent. Nat'l Chi. Co. v. Lumbermen's Mut. Cas. Co.* (1977), 45 Ill.App.3d 401, 408, 3 Ill.Dec. 938, 359 N.E.2d 797; *see also Ervin v. Sears, Roebuck & Co.,* 127 Ill.App.3d 982, 991, 469 N.E.2d 243, 250 (1984) ("[T]rial court properly awarded [the insured] prejudgment interest calculated from the dates on which costs and attorney fees were incurred by [the insured].").

Indeck claims Federal's conduct saddled it with more than $1.2 million in debt. Second Amended Counterclaim at 8, ¶ 41. And Indeck asserts that damages must have been easily ascertainable, as Federal has already made some payments to Indeck. Indeck's Response at 29. Federal states that "the only outstanding 'defense' fees total $121,000 and consist of . . . the difference between the reasonable rate paid to Indeck's defense counsel and the amount he billed following a $235 per-hour rate hike." Federal's Reply at 1 n.1. At this stage of the litigation, it appears as though the parties have been able to track the sum due. This suggests Indeck plausibly has asserted a claim for prejudgment interest under the facts.

**IT IS THEREFORE ORDERED** that Federal's Motion to Dismiss [Doc. No. 197] is **GRANTED IN PART** and **DENIED IN PART**, as set forth herein. Count II of Indeck's

Second Amended Counterclaim is **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED** this 27th day of September, 2017.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge